## ATLANTIC CREOSOTING CO. v. SAVANNAH LIGHTERAGE & TRANSFER CO.

### No. 488.

District Court, S. D. Georgia, Savannah Division.

March 28, 1946.

A. R. Lawton, of Savannah, Ga., for libellant.

Anton P. Wright and Luther Zeigler, both of Savannah, Ga., for respondent.

SCARLETT, District Judge.

This libel having come before me to be heard on the oral testimony and documentary evidence introduced at the trial, and on briefs filed by Proctors for both parties, I make the following:

### Findings of Fact

1. On or about August 7, 1943, respondent chartered to libelant its wooden Lighter No. 1 and, in pursuance of that charter, delivered said Lighter at libelant's wharf in the Savannah River on that day.

2. Respondent's Lighter was loaded by libelant with 2,796 creosoted cross ties belonging to the libelant of the fair market value of $1.40 per tie.

3. On August 7, 1943, respondent towed Lighter No. 1 from libelant's dock to Atlantic Coast Line Terminals in the Savannah River, where the Lighter was made fast about 7:30 P.M., on the outside, or river side, of the SS "Florida," which was tied up at one of the Atlantic Coast Line's docks parallel to the channel.

4. No cargo was unloaded from the Lighter during the night. About 7:30 A.M. on Sunday, August 8th, the Lighter, still

tied to the SS "Florida," was found to be partly submerged and all of the cross ties, except a few bundles, were overboard.

5. A number of cross ties were subsequently recovered by the libelant at a cost of $559.12. A total of 254 cross ties of the fair market value of $1.40 each, or $355.60, were finally lost. Libelant's damage amounts to $914.72.

6. Subsequently respondent beached the Lighter and found that a horizontal eight inch plank four inches thick in her side had been split horizontally down the middle for a distance of about two and one-half feet leaving a hole approximately two and one-half feet, horizontally, by four inches, vertically. This plank was submerged when the Lighter was loaded, but above the water line when she was empty.

7. This hole in the Lighter's side was the cause of her having been submerged and the cause of the loss of libelant's cross ties.

8. While the Lighter was being towed to the "Florida," and after she had been made fast there, the tide was rising. It was high about 1:30 A.M. Sunday, August 8th. The wind amounted to no more than a light breeze and came from the Southeast, so that the Lighter was in the lee of the SS "Florida." There is no evidence of any unusual waves or other disturbances in the Savannah River or that any boat which could have created waves had passed the SS "Florida" after the Lighter was fast to her. There is no evidence as to whether the hole in the Lighter was in the side next to the "Florida" or in the side which was away from her. There is no evidence that, after the Lighter was delivered under the charter, she encountered any harbor peril. The cause of the hole in the Lighter's side is left entirely to conjecture.

9. Though respondent kept records of its inspections of its Lighters, there is no evidence when Lighter No. 1 was last hauled out and inspected, or that the broken plank had been inspected before this Lighter was chartered and found to be sound.

10. Though the Captain of the tug which towed the Lighter to the SS "Florida" testified that he had inspected the Lighter before she left the libelant's dock and found her dry, he was uncertain as to when she was last pumped out and did not know whether he or a deck hand had made the inspection. I am not convinced that the hold of this Lighter was inspected just before or shortly before her delivery to the libelant or before she started on her trip to the Atlantic Coast Line docks.

11. Respondent plead, but has not proved, an agreement with libelant to the effect that respondent was relieved from liability for the loss of or damage to cargo loaded by libelant on this Lighter.

### Conclusions of Law.

1. The charter under which this Lighter was chartered by libelant was oral and was a demise charter.

2. Respondent impliedly warranted the seaworthiness of Lighter No. 1 at the time of her delivery under the charter.

3. The unexplained sinking of the Lighter in calm weather raises a rebuttable presumption that the Lighter was unseaworthy and, in this case, that presumption relates back to the time of her delivery under the charter.

4. There being no evidence which satisfies me that Lighter No. 1 was, in fact, seaworthy when she was delivered under the charter or that, after her delivery she encountered any harbor peril or suffered any blow or strain which a seaworthy Lighter could not be expected to withstand, I conclude that respondent's warranty of seaworthiness has been reached.

5. Libelant is entitled to recover of respondent $914.72 with interest thereon at seven per cent per annum from August 7, 1943, and all costs of court.